*112 The Opinion of the Court. — In this case the appellants hold the elder legal title to the land in contest ; cannot pe taken away from them, unless the ap-pellee, who was complainant in the original suit, can fehew a superior equitable title thereto. It will there *113 fore be necessary tó investigate the several entries under which the appellee claims the lánd, before it can be material to take notice of that of the appellants.
fot a fpr¡„g, Unaid-<fo by ocher 18 uncer"
omiffion to call for an by ““ cured by a cor. redi defoription.
a cree|t> as * locative call, ⅛
cal. i¡rig tor a (urvey which was not “«tonous, nor ta¡i¡ng tu ⅛_ foribe it fo that ot,hf's “’⅝ with reaionable jn{juftry have certainly found m
Matjoit,ame 70; and the cafes there cited'
It seems to this court, from the proofs in the cause, and examination ot two of the entries held by the peilee, the one for 400 acres, máde in the name óf Thomas Christy, and the other for 400 acres; made in the name of John Duncan, that both those entries are so en* tirely vague and uncertain, as to make it unnecessary to state the particular objections to them. Both these claims were, in the opinion of this court, very properly rejected by the decree of the general court. ; s
The appellee also claims the land by virtde of the following entry; ot which he has become the proprietor, to Wit :
“May the 20th 1780, William Pannel, assignee of William Dunlap, who was assignee of John Burger, enters 400 acres upon á pre-emption warrant No. 709; lying on Hinkston’s branch of Licking creek; about 8 miles from Ruddle’s station, on the trace that leads from Licking to Lexington; including a spring; and running down said branch for duantity.” And John Burger’s certificate, on which it is founded, is in every material respect the same*
The stream on which this entry has been surveyed, j ^ ,, , i does not appear ever to have been generally known by the name of Hinkston’s branch; but it is satisfactorily proven; that from the year 1776, it was notoriously called and known by the name oí I ownsend s ruri, or or creek. That call then in the entry is so far from giving correct information to others, that it must have led them astray, Unless some other call in the entry is sufficient to cofrect the mistake, and point oiit the branch intended; It has been Contended; that such is the case ; and that the ambiguity is removed by the call for the road leading from Licking to Lexington;
It appears from the plat filed, and the proofs in the cause, that the road leading from Ruddle's station, which was situated on the south fork of Licking, runs Up this branch from the mouth, out at the head. This circumstance seemed at first to give some plausibility to the argument ; but, on examination, there is nothing in it; This road was not in fact a road from Licking, properly speaking, to Lexington, but the road setting out *114 ancJ leading from Ruddle’s station, on the south fork of Ricking, to Lexington; and the name it bore cofres^ ponds with the fact; for it is proven by all the witnesses that it was always called the road from Ruddle’s station to Lexington»
The entry not having described this road either according to the truth of the fact, or the name by which it was exclusively known, must, at least, have rendered it very uncertain to others, whether this road was intended to be described $ when the entry does not describe or call for the road leading from Ruddle’s station, a subsequent locator Could-not readily presume so material a part ofi thfe ‘description;. could have been omitted through mistake. He would be induced to suppose this was not the road, but some other one which did in fact lead from main Licking to Lexington.
But it is urged that the call to lie about eight miles from Ruddle’s station, rendered both the branch and road certain, as this is the only road leading from Licking, or any of its waters, to Lexington, which the distance would reach ; and because no other such road, at any distance, is shewn. When both the branch and road, if the ones shewn were really meant, are so untruly described, the court cannot believe the call for the distance of about eight miles, as used in this entry, could remove the uncertainty» It would be a criterion to which no subsequent locator should be required to resort, to ascertain this to be the road and trace, when the locator of this entry had it in his power to give one so much more certain, by calling for the well known names Townsend’s run and the road from Ruddle’s station to Lexington. Any other road leading from Licking to Lexington, within about eight miles of Ruddle’s station, would answer that call equally well. And the court cannot presume that because the road shewn does not answer the other descriptions contained in the entry, there did not exist such an one as did correspond therewith.
From this view of the case, it will scarcely be necessary to observe, that the call for including a spring cannot aid the entry > which must be uncertain without the aid of the other calls.
' In every view which the court can take of the entry under consideration, it seems entirely destitute of that *115 certainty and precision requisite in a valid entry. The general court therefore did.right in; rejecting it.
The only remaining entry of the appellee to be considered, is the one sustained by the general court. It is in the following words :
“ February 21st 1783, Robert Moseby withdraws his entry of 1000 acres, made with the surveyor of Ken-; tucky, May the. 11th 1780,- and re-enters the same again on Townsend creek, a branch of Licking, about nine miles from. Ruddle’s station, near a south-east course, joining and running along WilügmM¿C une’s pre-emption line, on the lower si ’' ~ ' and taking in John 1776, and running do tity.” ;h-east course, iiuprugeuent made in ch side of the citeek for quan-⅜ ..
William M’Cune’s made December 5th Í78^ on the lower side, andfqrttó Iption entry of 900 acres, ½¾.hffi settlement down uie rupron both sides for quantity. His. settle'm£®t.-enteyt^fiíade June 24th 1(780, which is in the words afrrfs certificate, calls for lying near the head of Hinkston’s creek, waters of the southfork of Licking, on the road-leading from Ruddle’s station to Elkhorn.
It has already been sufficiently shewn, that the call for Hinkston’s creek, would, without other description correcting, orexplaining it, be false and-delusive, when applied to the branch on which the surveys under consideration. have been made. But the* other nail in M’Cune’s settlement entry, to lie on the road leading from Ruddle’s, station.to Elkhorn, seems to remove that uncertainty in a great measure ; as the plat and proofs in the cause shew thát the road called for, which is the same leading to Lexington, runs up this creek the whole length thereof, and, crossing,the dividing ridge, passed over to Elkhorn.
If M’Cune’s entry had called for any particular spot or object on that road, to which his claim could with certainty have been attached, it might have been good* But the entry only calls to lie wear the head of the creek ¿ an expression so loose and indefinite as to make it wholly uncertain. It is a relative term, expressing no definite idea, and, therefore incapable of pointing out any particular distance from the head of the ,creek, at which %e land was intended to be located, Indeed, M’Cune’s *116 settlement entry has no locative call in it; and consist of general description only.
If Moseby’s entry, in calling for M’Gune’s pre-emp-; tion line, is supposed to relate to the pre-emption entry, it must be equally vague and uncertain.
But it is urged, and perhaps with propriety, that the call must be considered as having relation to the survey, which had previously been made of M’Cune’s pre-emption ; and that the call for the survey, under the circumstances of this case, is a good and certain one.
William M’Cune’s pre-emption survey was made on the 21st day of January 1783, just one month before the date of Moseby’s entry. There is no proof of its having acquired in the interirq any degree of notoriety; and the certificate of survey, so far as appears to the court, might have still remained in the pocket of the deputy surveyor. The call for it must, therefore, in reason and under the authority of the decisions in Key vs. Matson (a), and Moore vs. Whitledge. and Reno (b), be considered as altogether uncertain and defective ; unless the place at which it was to be found, is so described in Moseby’s entry, that others might with reasonable industry have certainly found it. This the court is of opinion has not been done. And even if an inquirer had found the lower line of M’Cune’s pre-emption, he could not have known it to be the line intended. Indeed, he would have been led to suppose it was not, on account of its varying so materially in its course from that described in the entry.
The exhibits in the cause prove that there were other surveys made on the road, before the date of Moseby’s entry, corresponding as well with the description contained in it; and none of them having been recorded, so far as appears to the court, the uncertainty must have been increased thereby.
The call in the entry for “taking in Killgore’s improvement,” is equally uncertain. Its situation is not described, and it was made nearly half a mile from the road, entirely out of view of the passengers. There were several other improvements near it, and equally well corresponding with the other calls in the entry ; and it was so far from possessing notoriety, that it does not appear any person besides Killgore himself, ever saw it, until after Moseby’s entry was made. From theses *117 considerations, it seems to this court that the said entry, made in the name of Robert Moseby, cannot- be supported ; and that the general court erred in decreeing upon it in favor of the appellee. — —Decree reversed.

«5 Ante ja.

⅛) Ante 8g«